J. L. Gardenhire, Trading as J. L. Gardenhire Drilling Company, Appellee, v. O. L. Ray and A. W. Gerson, Defendants. A. W. Gerson, Appellant.

Opinion filed November 8, 1939. Rehearing denied December 15, 1939.

Terry, Gueltig & Powell, of Edwardsville, for appellant.

WHAM & WHAM, of Centralia, for appellee.

MR. PRESIDING JUSTICE STONE delivered the opinion of the court.

This suit was commenced in the circuit court of Marion county by the planitiff appellee against O. L. Ray and A. W. Gerson to recover for drilling a portion of a test oil well near Centralia, in Marion county, under a contract which the plaintiff claimed was entered into by the defendants. The case was tried by the court without a jury. The trial court found in favor of the plaintiff and entered a judgment against both defendants for $1,614.25 and costs of suit. The defendant Gerson prosecutes this appeal to reverse the judgment as to him.

The trial court arrived at the conclusion that as a matter of fact and law defendant Ray and appellant Gerson were partners and engaged in the joint undertaking, and that the employment and services of the appellee were not only in proper furtherance thereof, but actually authorized by appellant. Unless it can be said that the record in this case fails to support the trial court's conclusions or findings, we must affirm the judgment.

From the evidence it appears that in July, 1938, defendant Ray was residing in the city of Centralia, Illinois, and that he had for some 12 years prior thereto been engaged in the oil business in various localities. During the late spring or early summer of 1938 he had drilled and completed three producing wells in the vicinity of Centralia, which were operated by himself and appellant Gerson, who had purchased an undivided one-half interest therein. On several occasions immediately prior to July, 1938, the defendant Ray informed Gerson of a certain oil and gas well covering some five acres of land in the village of Wamac, Illinois, which was obtainable from a party by the name of Burch.

Thereafter the lease was discussed by Gerson and Ray on several occasions and was finally acquired by Ray under a certain contract with Burch. Thereafter upon the day immediately preceding the last day fixed for the commencement of drilling operations, according to Ray's testimony, they inspected the lands covered by the lease or agreement, which lands were known as and referred to by the parties as the ''wheat field'' and engaged in the following conversation:

Gerson: ''On what basis do you want me to go in with you?

Ray: ''Fifty-fifty.

Gerson: ''What do you want to put the lease in for?

Ray: ''One thousand two hundred dollars a well.

Gerson: ''I want to go in with you, but don't drill too fast.

Ray: ''I have to start tomorrow or lose the lease.

Gerson: ''All right. What about getting a cable tool machine started?''

Immediately following said conversation between Ray and Gerson, Ray contacted appellee, who was engaged in the drilling of oil wells or tests for oil and gas in the vicinity, and employed the appellee to immediately commence a test well and to furnish all necessary machinery, equipment, labor, etc., and proceed therewith to a depth of approximately 600 feet where it could be ascertained whether certain existing open mine workings were or were not to be encountered. In the event such mine workings were encountered the appellee was to set 10 inch casing in order to permit proper continuation of further drilling. By this written agreement appellee was to be paid a sum computed at the rate of $2.75 per depth foot drilled below the surface. As evidence of the agreement of employment, defendant Ray executed an instrument in writing embodying the above terms. Defendant Ray and appellant Gerson were specifically named and designated in

said instrument as party of the first part and the instrument was signed by Ray, individually, and "A. W. Gerson by O. L. Ray." Shortly after defendant Ray procured from Mr. Hodson an assignment of a half interest in the lease to Gerson and a written title opinion relative to the lease and the land involved. This assignment, together with the title opinion, was tendered by defendant Ray to appellant Gerson, who declined to accept the opinion for the stated reason that the opinion was addressed to Ray and not directly to the appellant. The drilling operations proceeded for a period of several days, during which time appellant Gerson visited the premises, went upon the derrick floor, engaged the employees in conversation and made inquiry concerning the progress thereof. It is disputed as to the number of visits appellant made to the well during the drilling. However, appellant admits at least one occasion when he visited the well in the presence of defendant Ray. At the conclusion of the drilling operations the appellee's manager, H. C. Gardenhire, Sr., called upon Ray for the purpose of collecting the moneys which were due on account of the contract of employment. Ray thereupon called appellant at his home in Wood River, Illinois, by telephone and informed him that the well was completed and that the appellee wanted his money. According to Ray, Gerson's first inquiry in that telephone conversation was, "Did he hit the mine?" and that Gerson stated he would come over in a couple or three days. Appellant did not come to Centralia and a few days thereafter defendant Ray and H. C. Gardenhire, Sr., drove over to Wood River, Illinois, to see appellant at his home. A conversation concerning the payment for the drilling thereupon took place, during which, according to Ray and Gardenhire, the appellant made no denial of the obligation to pay for the drilling, but in fact acknowledged it and said, expressly, that he would

make payment thereof. The reason given for not making immediate payment was that he had sufficient money on hand to pay his taxes which were then due and if not paid immediately would be subject to 2 per cent penalty. He also stated that he wanted to make payment from moneys he had in a power refinery company. Some two days after this conversation appellant went to Centralia but did not make the payment in question, whereupon the appellee in due course brought this suit.

Appellant denies the conversation immediately prior to the employment of appellee, denies any telephone conversation with Ray, and claims that upon completion of appellee's contract his conversation with Ray and Gardenhire was as follows:

"Yes, I would like to go in, but I am not financially able and I have to pay my taxes or lose two per cent.

"Well, I am coming to Centralia tomorrow and check up on what I have coming to me at the Power Oil and Refining Company and if I have enough money I might come in with you."

Appellant admits that he on at least one occasion visited the "wheat field" while the drilling was in progress and admits that in the presence of Gardenhire and Ray that he at least did not emphatically deny any interest whatsoever in the well.

The appellant contends, first, that he made no contract with the appellee; second, that the defendant Ray, who made the contract, had no authority to bind him; third, that such authority cannot be proven by Ray's testimony alone; fourth, that appellee not having relied upon anything except what Ray told him, cannot hold appellant Gerson; and, fifth, that the statute of frauds prevents any recovery.

It must not be overlooked that the primary question involved in this case is did appellant go into this lease, and is he obliged to appellee. Whether a partnership

existed by and between Ray and appellant was dependent upon the facts. Written articles of agreement are not necessary to prove a partnership, since the relationship may exist under a verbal agreement. *People v. Sholem,* 244 Ill. 502, 508; *Haug v. Haug,* 193 Ill. 645, 647; *Bopp v. Fox,* 63 Ill. 540, 543. The existence of a partnership may be implied from circumstances. *Kelleher v. Tisdale,* 23 Ill. 405, 406; *Haug v. Haug,* 193 Ill. 645, 647; *Bruen v. People,* 206 Ill. 417, 422. The trial court found that a partnership existed between Ray and Gerson on the facts as presented in the testimony taken at trial, and a reviewing court is not justified in reversing that factual finding unless it is clearly against the weight of the evidence and constitutes palpable error. *Fitch v. King,* 279 Ill. 62, 65. Once the court found that the partnership existed, points one and two made by appellant are answered. As a partner, Ray had ample authority to bind the partnership as the subject matter of the contract was essential to the furtherance of the partnership business, namely, that of getting a well drilled.

As to the third point made by appellant that Ray's authority to contract and bind appellant cannot be established by Ray's testimony alone, we think the record shows ample basis for the trial court's finding exclusive of Ray's testimony that appellant was interested in the drilling as a partner. We believe the rule to be well stated in *Hohnadell v. Ellsworth,* 154 Ill. App. 484, 487 (and cases cited therein): ''Where, as here, an action is pending against two or more partners and one or more of the decedents puts the fact of partnership in issue by a proper plea, the admissions, statements or declarations of his co-defendant, made in his absence, in reference to the existence of the partnership are not in the absence of other evidence tending to establish a partnership admissible upon the issue. But where sufficient evidence has been given to raise a fair presump-

tion that two or more persons are partners then the acts and declarations of each are admissible as evidence against the others for the purpose of strengthening the *prima facie* case already established.''

In this case, aside from the testimony of Ray that appellant and Ray were in on the drilling on a ''fifty-fifty'' basis, there was ample evidence tending to establish the existence prima facie of a partnership, to wit, the testimony of H. C. Gardenhire, Jr., Harland Wimsatt and Ruel D. Smith, to the effect that Ray stated in appellant's presence at the well that Gerson was his (Ray's) partner in the well in question. It also appears that the appellant visted the well during the drilling on at least one occasion that he admits and inquired as to the progress of the drilling.

To appellant's fourth contention suffice it to say that since the partnership relation in fact existed, it was immaterial whether appellee knew of Gerson's connection or not. 47 Corpus Juris, sec. 384 (8), page 899.

Finally, the appellant contends that the statute of frauds prevents any recovery. With this we are unable to agree. The mere fact that the subject matter upon which the partnership was to act may have involved the development and improvement of real estate did not bring the oral partnership agreement within the statute of frauds. *Van Housen v. Copeland,* 180 Ill. 74, 82; *Morrill v. Colehour,* 82 Ill. 618; *Allison v. Perry,* 130 Ill. 9; *Roby v. Colehour,* 135 Ill. 300; *Speyer v. Desjardins,* 144 Ill. 641, 648.

We have carefully examined the entire record before us and are of the opinion that the evidence presented amply justified the trial court's finding. The judgment of the circuit court is affirmed.

*Judgment affirmed.*